UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

CASE NO. 10-20261-CR-MOORE

CARLO DEMARCO,

    Defendant.

_____/

**SENTENCING MEMORANDUM**

    COMES NOW the Defendant, Carlo Demarco, by and through his undersigned attorney William A. Clay, and hereby submits the instant Sentencing Memorandum wherein defense counsel recommends that this Court find reason for a downward departure and downward variance and therefore sentence the Defendant below the low-end (151 months) of the Sentencing Guidelines. The following is set forth in support of the defense request for downward departure and downward variance from the Sentencing Guidelines range:

    1. The Defendant, Carlo Demarco is free to argue for a sentence below the Sentencing Guideline range.

    2. Undersigned defense counsel does respectfully request that this Court impose a 60-month (5-year) term of confinement in the Bureau of Prisons with a judicial recommendation/referral to the BOP that the Defendant be admitted into the Sex Offender Treatment Program. The parties agree that the Defendant should be referred to the Sex Offender Treatment Program. Undersigned counsel does further recommend that

this Court impose an <u>extended</u> term of Supervised Release whereby specific conditions of Supervised Release, including continued psychological counseling and therapy directed to the Defendant's various psychological conditions/disorders particularly focused upon the psychosexual disorder, are imposed.

      3. The Defendant, Carlo Demarco is approximately 35 years of age, a U.S. citizen, and has absolutely no prior criminal record.

      4. Grounds for Downward Departure.

**Susceptibility to abuse in prison**

In 1996, the United States Supreme Court affirmed a downward departure for susceptibility to abuse in prison. *Koon v. U.S.*, 518 U.S. 81 (1996). The *Koon* case involved the officers who were guilty of beating Rodney King. The District Court found that the widespread publicity and emotional outrage surrounding the case from the outset made the petitioners particularly likely to be targets of abuse during their incarceration. The Supreme Court affirmed the District Courts departure on the grounds that "[t]he District Court's conclusion that this factor made the case unusual is just the sort of determination that must be accorded deference by the appellate courts." *Id.* at 111-12.

In a similar case, the United States Court of Appeal, Ninth Circuit, affirmed a downward departure for susceptibility of abuse in prison in a child pornography case. *U.S. v. Parish*, 308 F. 3d 1025 (9th Cir. 2002). In the *Parish* case, "[t]he District Court found that Parish was susceptible to abuse in prison because of a combination of factors: his stature, his demeanor, his naivete, [and] the nature of the offense." *Id.* at 1031. Parish was 5'11" and weighed 190 pounds. The Appellate Court commented that at sentencing, there was "considerable testimony about [Parish's] demeanor, including [the

psychosexual psycholgist's] description of him as 'positive and caring' and the doctor's explanation that these are not good characteristics to have in prison." *Id.* at 1031. Lastly, the Appellate Court considered the District Court's finding that nature of the crime itself increased the susceptibility to abuse in prison and decided that all of the factors taken together made it an individualized determination by the District Court, as opposed to a departure based on mere membership of a class of offenders.

In the instant case before the court, the Defendant, Carlo De Marco is also highly susceptible to abuse in prison for the factors considered in *Parish* as well as other factors specific to Mr. De Marco.

As reflected in the PSI Report, Carlo De Marco, will be 35-years-old in December 2011, is five feet six inches tall, and weighs 152 pounds. Mr. De Marco has no prior experience with the criminal justice system or a jail environment, other than in the instant case. Mr. De Marco has also been described by family members in the letters provided to the Court as "very caring" and "harmless." Obviously, Mr. De Marco also shares with Mr. Parish the factor that they both are guilty of a child pornography offense. On these factors, Mr. De Marco's vulnerabilities are at least the same if not more aggravated than Mr. Parish's.

Mr. De Marco's susceptibility to abuse is exacerbated by a significant factor that was NOT a factor discussed in the *Parish* case; Mr. De Marco's "extremely high level of [social] anxiety" and historical "inability to interact with others on a significantly high level." Dr. Edward S. Sczechowicz, Jr. (Clinical Director of South Florida Sexual Addictions and Disorders Treatment Center) goes on to specifically state in his Addendum to Psychosexual Evaluation of September 7, 2011, that Mr. De Marco's social

anxiety "combined with [his] overall demeanor increases the likelihood of victimization by others in a prison environment." (*See attached* - p. 3 - Addendum to Psychosexual Evaluation – 9/7/11).

Section 5H1.4 of the Federal Sentencing Guidelines provides that "[p]hysical condition or appearance, including physique, may be relevant in determining whether a departure is warranted, if the condition or appearance, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines." This Court has the authority to depart downward under this guideline provision. Mr. De Marco's physical condition and appearance in combination with his psychological disorders and the nature of the offense make a downward departure appropriate in this case. Mr. De Marco suffers from a unique susceptibility to abuse in prison due to the aforementioned factors.

5. Grounds for Downward Variance.

After "consult[ing] and correctly determin[ing] the sentencing range prescribed by the Sentencing Guidelines. . . [t]he court must then impose a reasonable sentence in light of the factors enumerated in 18 U.S.C. § 3553(a)." *U.S. v. McBride*, 511 F. 3d 1293 (11th Cir. 2007); *see also Gall v. United States*, 552 U.S. 38 (2007). The applicable 3553(a) factors are set forth and discussed below to demonstrate why a downward variance is merited in this case.

### 3553(a)(1) – The nature and circumstances of the offense and the history and characteristics of the defendant.

a. <u>Nature and circumstances of the offense</u> – As discussed above, as part of the reasoning for a downward departure, the nature of the offense here makes Carlo De

Marco particularly susceptible to abuse in prison. In Mr. De Marco's own correspondence to counsel, Mr. De Marco explains that he often hears other inmates approvingly tell stories of child crime defendants being stabbed to death or beaten severely. Mr. De Marco himself has to lie about the nature of the offense for which he is incarcerated, but as he has detailed to counsel in correspondence, his story begins to fall apart when other inmates question him more deeply. Mr. De Marco fears for his life everyday for this very reason.

With regard to how Mr. De Marco committed the crime of distribution of material containing child pornography, it is important to understand the way in which the peer-to-peer file sharing software that Mr. De Marco utilized works. Once the peer-to-peer software is installed on one's computer, the user can then designate any data on his hard drive to be "shared" through the peer-to-peer software. Once the user connects with another user through the peer-to-peer software, each user can then download any file that is contained in the other user's "shared" folder. Therefore, Mr. De Marco did not actively distribute the material in the regular sense. Instead, he was passively sharing the material. The difference is akin to leaving a basket of fruit on your doorstep for people to take if they want, as opposed to going around the neighborhood and delivering fruit to your neighbors proactively. Although this may be seen as a minor distinction, when taken into consideration with all of the other 3553(a) factors, the distinction augments the merit of a downward variance.

    b. <u>History and characteristics of the defendant</u> – It goes without saying that a great number of defendants who plead guilty to child pornography offenses have some

species of psychological disorder and/or have been abused in one way or another at some point their life history. Carlo De Marco's history and characteristics however are unique.

As reflected in the letters provided to the court and the Addendum to Psychosexual Evaluation by Dr. Sczechowicz, which are attached to this Sentencing Memorandum, Carlo De Marco has suffered hardships, which may have set the stage for him to commit the instant crime.

Mr. De Marco enjoyed the love and affection of his father until the age of 2, at which point he was completely abandoned by his father. The abandonment by his father not only affected Mr. De Marco directly, but also indirectly by how it affected his mother, Elsy Turriago. Ms. Turriago was forced to struggle financially and emotionally without the presence of Mr. De Marco's father. As Ms. Turriago and others describe in their letters, Ms. Turriago physically, verbally and emotionally abused Mr. De Marco throughout his childhood. Mr. De Marco also was forced by the circumstances to quickly become the "man of the house" and help his mother raise Francesco, his younger sibling. Mr. De Marco was affected by this and would ask his mother why he could not be like all of the other children.

Mr. De Marco was sexually abused by his step-father at the age of 7. Dr. Sczechowicz states in his Addendum to Psychosexual Evaluation that the abuse "may be an etiological variable in the development of [Mr. De Marco's] attraction to male children."

Mr. De Marco was never able to make friends outside of the family. He would eat lunch alone in the library instead of along with all his classmates in the cafeteria. He did not attend his prom or his high-school graduation. Mr. De Marco did receive some

6

treatment for Attention Deficit Hyperactivity Disorder, Social Anxiety, and Depressive Disorder, however; as Dr. Sczechowicz states in his Addendum to Psychosexual Evaluation, "[t]here does not appear to have been any attempts at psychotherapeutic intervention in order to change [Mr. De Marco's social inabilities], most likely due to a lack of understanding of [his] underlying difficulties."

Dr. Sczechowicz, pointed out in his original report of Psychosexual Evaluation of Mr. De Marco, that Asperger's Disorder was a possible explanation for the extreme social difficulties and withdrawal experienced by Mr. De Marco. Pursuant to an Agreed Motion for Court to Order a Study of Defendant (Document 52), Mr. De Marco was sent to Federal Medical Center, Butner, North Carolina for evaluation. Although Mr. De Marco was not diagnosed with Asperger's Disorder, Dr. Sczechowicz summarized in his Addendum to Psychosexual Evaluation that "[i]t would appear Mr. De Marco's history is characterized by a number of the symptoms of Autism Spectrum, indicating he falls somewhere on the continuum although not at the diagnostic cutoff point." What is clear is that Mr. De Marco suffers from psychological issues that have significantly hampered his ability to socialize with other adults. Dr. Sczechowicz goes on to explain that "Mr. De Marco's inability to interact with others on a significantly high level also would appear to be an etiological factor in his attraction to children." It is important to note that, as Dr. Sczechowicz points out in his Addendum to Psychosexual Evaluation, "Mr. De Marco's difficulties are not volitional on his part but rather a condition that has occurred outside of his control."

Carlo De Marco has absolutely no criminal history aside from the instant case, is loved by his family very much, and has been an otherwise responsible, upstanding, and

productive citizen. Most importantly, Mr. De Marco has never committed nor attempted to commit any sexual contact offense. As evidenced by the polygraph examination administered to him on April 29, 2010 and attached to this Sentencing Memorandum, Carlo De Marco has never had sexual intercourse with any person under 18 years old and has never had sexual contact with any person under the age of 18 years old.

Mr. De Marco has fully cooperated with Federal law enforcement authorities and, in fact, did sign an authorization form allowing the FBI to assume his online presence. The FBI is now able to use Mr. De Marco's online presence on the peer-to-peer file-sharing program to collect evidence against and prosecute others who are engaging in the possession and distribution of child pornography.

**3553(a)(2) – The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

c. <u>The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense</u> – There is no doubt that the instant offense is a serious one and that just punishment must be provided. The question is whether or not a sentence within the range of 151-188 months is just. On the low-end, that would be a sentence of twelve and a half years. It is important to note that the language of 18 U.S.C. § 3553(a) gives us guidance by providing that "[t]he court shall impose a sentence sufficient but not greater than necessary, to comply with the purposes set forth in paragraph (2)." Defense counsel respectfully recommends to this

Court to impose a sentence of 60 months (5 years) confinement to be followed by an extended term of Supervised Release as previously recommended herein. Undersigned counsel strongly urges the Court to accordingly vary below the Sentencing Guideline range.

On June 1, 2010, Mr. De Marco's bond was revoked after Mr. De Marco made plans and took steps in furtherance of committing suicide. Mr. De Marco eventually decided not to take his own life but he got very close to doing so. Mr. De Marco almost killed himself because of his deep remorse and shame. Also, Mr. De Marco had a very real fear of the amount of time he was facing in prison and the dangers that he feared awaited him in the prison system.

After the service of Mr. De Marco's lengthy prison sentence, he will thereafter be subject to a lengthy and restrictive term of Supervised Release. Mr. De Marco will also be obligated to register as a sex offender. The defendant does not contend that this is, in any way, unfair or unjust; however, these hardships exemplify the severity of the consequences of his actions. A five-year prison term, lengthy/restrictive supervised release, and the stigma of being a registered sex offender will severely, sufficiently, and justly punish Carlo De Marco.

  d. <u>To protect the public from further crimes of the defendant</u> - The typical child pornography defendant is a first offender with no history of harming or touching children. The best empirical research shows that the vast majority of these offenders do not go on to molest children. For example, a soon to be published study that followed 72 individuals referred to federally-funded outpatient treatment programs after being

9

charged with or convicted of a child pornography offense for four years found that none were rearrested for a contact offense.[1]

Similarly, a recent study followed 231 child pornography offenders without prior contact offenses for six years after their initial offenses. It found that nine persons, or 3.9 percent of the sample, committed a non- contact sexual offense; only two persons, or 0.8 percent of the sample, committed a contact offense.[2] The same results have been reached in other reliable studies.[3] Carlo De Marco, as evidenced by the results of his polygraph exam and the letters provided to the Court from his family members, has never harmed any child. On the contrary, Mr. De Marco is loved by his younger family members and will be missed dearly while incarcerated.

Of note is Dr. Sczechowicz's opinion that "Mr. De Marco, based on the lack of markers in this regard, would appear to be a <u>low</u> risk of utilizing child pornography in the future." (*See* attached - p. 11 – Psychosexual Evaluation – 9/16/2010)

---

[1] *See* Wollert, R., W., Waggoner, J., & Smith, J., Federal Child Pornography Offenders (CPOs) Do Not Have Florid Offense Histories and Are Unlikely to Recidivate (forthcoming in The Sex Offender: Volume 7).

[2] *See* Jérôme Endrass *et al.*, *The Consumption of Internet Child Pornography and Violent Sex Offending*, 9 BMC Psychiatry 43 (2009), http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2716325/pdf/ 1471–244X–9–43.pdf..

[3] *See* Michael C. Seto & Angela W. Eke, *The Criminal Histories and Later Offending of Child Pornography Offenders*, 17 Sexual Abuse 201, 208 (2005) (finding that 1.3 percent of Internetonly offenders recidivated with contact sex offenses, and stating that "our finding does contradict the assumption that all child pornography offenders are at very high risk to commit contact sexual offenses involving children."); L. Webb, J. Craissati & S. Keen, *Characteristics of Internet Child Pornography Offenders: A Comparison with Child Molesters*, 19 Sexual Abuse 449, 463 (2007) (finding Internet-only offenders "significantly less likely to fail in the community than child molesters," and concluding that "by far the largest subgroup of internet offenders would appear to pose a very low risk of sexual recidivism"), http://sax.sagepub.com/content/19/4/449.full.pdf+html; Michael C. Seto, *Assessing the Risk Posed by Child Pornography Offenders, presented for the G8 Global Symposium* (Mar. 9, 2009), http://www.iprc.unc.edu/G8/Seto_Position_Paper.pdf; Andres E. Hernandez, *Psychological and Behavioral Characteristics of Child Pornography Offenders in Treatment,* at 4 (Apr.2009) ("the argument that the majority of [child pornography] offenders are indeed contact sexual offenders and, therefore, dangerous predators . . . simply is not supported by the scientific evidence") (unpublished manuscript) (emphasis deleted), http://www.iprc.unc.edu/G8/ Hernandez—position—paper—Global—Symposium.pdf.

The court has the authority to impose supervised release in this case for "any term of years not less than 5, or [up to] life." 18 U.S.C. § 3583(k). Undersigned counsel urges the Court to use the restrictions of an extended Supervised Release term as a method to further ensure that the public is protected and that the Defendant continues to receive treatment.

e. <u>To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner</u> – The defendant urges the court to recommend and refer him to a BOP facility wherein he will be able to participate in the Sex Offender Treatment Program, as recommended by Dr. Adeire Sribling Riley, Forensic Psychologist, Mental Health Department, FMC Butner, North Carolina on page 16 of her Study and Observation Report, which is attached to this Sentencing Memorandum. Dr. Stribling Riley explains that "Mr. De Marco could benefit from ongoing psychotherapy. . .[and] [p]sychological testing and his history of treatment and participation suggest that he will likely engage productively in the therapeutic process." Dr. Sczechowicz, in his Addendum to Psychosexual Evaluation also recommends that Mr. De Marco be placed in such program and adds that <u>"Mr. De Marco would appear to be an excellent candidate for treatment."</u> The Defendant urges the court to impose a 60-month term of imprisonment to a facility wherein he can participate in the Sex Offender Treatment Program.

It is defense counsels understanding, from reading the BOP's regulations pertaining to the Sex Offender Program, that participants in these programs are accepted into the program toward the final-phase of their sentences. According to the BOP regulations, the duration of the program is 18-36 months. Of concern is the

11

psychological damage and/or physical danger in prison that a guidelines range sentence may expose Mr. De Marco to before he get the chance to participate in the Sex Offender Treatment Program.

### Deference to the Federal Sentencing Guidelines

In a June 28, 2010 letter to the U.S. Sentencing Commission, the Director of the Department of Justice's Office of Policy and Legislation, Jonathan Wroblewski, encouraged the Commission to conduct a review of – and recommend reforming – the child pornography guideline. Noting that Congress has repeatedly directed the Commission to amend this guideline to increase base offense levels and add enhancements, Mr. Wroblewski urged the Commission to recommend to Congress legislation that would permit revision of the guideline to better account for offense severity and culpability.[4]

The root problem is that the child pornography guideline was not developed by the Commission as directed in the Sentencing Reform Act. Rather, as the Department points out, the child pornography guideline has been driven up by congressional directives (some at the instance of the Department itself) that were not based on empirical evidence regarding the manner in which these offenses are regularly carried out, technological realities, or the history and characteristics of these offenders.[5] As a

---

[4] Letter from Jonathan Wroblewski to Hon. William K. Sessions III, Chair, U.S. Sent'g Comm'n (June 28, 2010) at 6 [hereinafter "Wroblewski Letter"].

[5] The Wroblewski letter urges the Commission to recommend reforms of the child pornography guideline to better reflect offense seriousness and offender culpability, citing some of the congressional directives that have required increased guideline ranges over the years, including the PROTECT Act. *Id.* at 6. The Department notes in particular "enhancements for the use of a computer in the commission of the crime and for the number of images involved in the crime" as problematic. *Id.* The Commission was compelled to add the computer enhancement by the Sex Crimes Against Children Prevention Act of 1995 despite its objections to its breadth. *See* U.S. Sent'g. Comm'n, Report to Congress, Sex Offenses Against Children at 28-30 (1996). The number of images enhancement was a direct amendment of the guideline, drafted by employee of the Department of Justice and included in the PROTECT Act via the Feeney Amendment. *See*

consequence, the guideline became unduly severe. Many judges and prosecutors find that the guidelines for typical child pornography cases are too high and that they fail to differentiate between more and less serious offenses and offenders. This is evidenced by statistics and written judicial decisions explaining these problems.

The high rate of below-range sentences in child pornography cases does not reflect a disregard for public safety or a casual rejection of the guidelines generally. Judges departed or varied downward, for example, in only 7.6% of murder cases, 4.7% of manslaughter cases, and 1.9% of drug possession cases in 2010.[6] The child pornography cases in which unusually high rates of below-guideline sentences occur do not involve production of child pornography or any kind of sexual contact or abuse; they involve possession or receipt of child pornography.[7] Cases sentenced under this guideline, § 2G2.2, comprise only 2% of all federal cases.

The rate of non-government sponsored below-range sentences in child pornography cases sentenced under § 2G2.2 was 22% in 2006, 27.2% in 2007, 35.7% in 2008, 43% in 2009, and 42.7% in 2010.[8] The rate of government sponsored below-range sentences in such cases was 9.4% in 2006, 7% in 2007, 8.5% in 2008, 10.5% in 2009, and 13.4% in 2010. These cases rarely present an opportunity for cooperation against others (and are never subject to "fast track" departures), so the vast majority of these

---

Pub. L. No. 108-21, § 401(i)(1)(B), (C).
[6] U.S. Sent'g Comm'n, 2010 Sourcebook of Federal Sentencing Statistics, tbl. 27A.
[7] Id.; U.S. Sent'g. Comm'n, Use of Guidelines and Specific Offense Characteristics Fiscal Year 2009. A small percentage of cases sentenced under this guideline (§ 2G2.2) involve "distribution," usually trading in kind over the internet (13.8% of all cases), and rarely for pecuniary gain (2.2% of all cases). Id.
[8] U.S. Sent'g. Comm'n, 2010 Sourcebook of Federal Sentencing Statistics, tbl. 27A; U.S. Sent'g. Comm'n, 2006-2009 Sourcebook of Federal Sentencing Statistics, tbl. 28.

government-sponsored reductions are for other reasons, that is, reasons under § 3553(a).[9]

Notably, during the first quarter of 2011, the government-sponsored below guideline rate increased by almost four percentage points -- to 17.3% -- and 85% of these were for reasons *other* than cooperation, that is, to comply with the purposes of sentencing, reflect the circumstances of the offense, and account for the history and characteristics of the defendant.[10] In 2011, the non-government sponsored rate of below guideline sentences rose, to 43.7%. This confirms that the child pornography guideline has lost significant persuasive impact with judges and with prosecutors as the participants in the federal criminal justice system conscientiously labor to produce fair and reasonable sentences that are tailor made to the unique circumstances of the child pornography crime and the child pornography offenders. Judges approach these cases with great seriousness, as shown by the numerous written decisions carefully explaining the problems with this guideline.[11]

---

[9] U.S. Sent'g. Comm'n, 2010 Sourcebook of Federal Sentencing Statistics, tbls. 27, 27A; U.S. Sent'g. Comm'n, 2006-2009 Sourcebook of Federal Sentencing Statistics, tbl. 28.

[10] U.S. Sent'g. Comm'n, Preliminary Quarterly Data Report, 1st Quarter Release, 2011, tbl. 3.

[11] *See, e.g., United States v. Beiermann*, 599 F.Supp.2d 1087 (N.D. Iowa Feb. 24, 2009); *United States v. Burns*, slip op., 2009 WL 3617448 (N.D. Ill. 2009); *United States v. Riley*, 655 F. Supp. 2d 1298 (S.D. Fla. 2009); *United States v. Phinney*, 599 F. Supp. 2d 1037 (E.D. Wis. 2009); *United States v. Grober*, 595 F.Supp.2d 382 (D. N.J. 2008); *United States v. Stern*, 590 F. Supp. 2d 945 (N.D. Ohio 2008); *United States v. Johnson*, 588 F. Supp. 2d 997 (S.D. Iowa 2008); *United States v. Rausch*, 570 F. Supp. 2d 1295 (D. Colo. 2008); *United States v. Doktor*, slip op., 2008 WL 5334121 (M. D. Fla. Dec. 19, 2008); *United States v. Ontiveros*, 2008 WL 2937539 (E.D. Wis. July 24, 2008); *United States v. Hanson*, 561 F.Supp.2d 1004 (E. D. Wis. June 20, 2008); *United States v. Shipley*, 560 F. Supp. 2d 739 (S.D. Iowa June 19, 2008); *United States v. Taylor*, 2008 WL 2332314 (S.D.N.Y. June 2, 2008); *United States v. McClelland*, 2008 WL 1808364 (D. Kan. April 21, 2008; *United States v. Baird*, slip op., 2008 WL 151258 (D. Neb. Jan. 11, 2008); *United States v. Stabell*, 2009 WL 775100 (E.D. Wis. March 19, 2009); *United States v. Gellatly*, 2009 WL 35166, *3-5 (D. Neb. Jan. 5, 2009); *United States v. Noxon*, 2008 WL 4758583, *2 (D. Kan. Oct. 28, 2008); *United States v. Stults*, 2008 WL 4277676, *4-7 (D. Neb. Sept. 12, 2008); *United States v. Grinbergs*, 2008 WL 4191145, *5-8 (D. Neb. Sept. 8, 2008); *United States v. Goldberg*, 2008 WL 4542957, *6 (N.D. Ill. April 30, 2008); *United States v. Sudyka*, 2008 WL 1766765, *5-6, 8-9 (D. Neb. April 14, 2008).

## Downward Variance Legal Precedent and Conclusion

In 2006, the Eleventh Circuit affirmed a 72-month sentence followed by a three-year term of supervised release imposed for distribution of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1). *U.S. v. Gray*, 453 F. 3d 1323 (11th Cir. 2006). The guidelines range was 151 to 188 months imprisonment. In the *Gray* case, the Appeals Court affirmed because the District Court took into account the defendant's "age, his prior minimal criminal record, and his medical condition." *Id.* at 1325. The defendant in the *Gray* case was a 64-year-old man with a minimal criminal record and a heart condition.

In 2007, the Eleventh Circuit affirmed an 84-month sentence followed by a ten-year period of supervised release imposed for distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(B). *U.S. v. McBride*, 511 F. 3d 1293 (11th Cir. 2007). The guideline range was 151 to 188 months. In the *McBride* case, the Appellate Court affirmed in part because the "sentence in [the] case involves a significant time in prison and a 10-year period of supervised release." *Id.* at 1298. The opinion also acknowledges the District Court's consideration of defendant McBride's own history of abuse and abandonment by his parents. It is important to note that McBride was diagnosed as a pedophile, and at age 16, while in treatment sessions pursuant to a guilty plea to two counts of lewd acts on a child, admitted to "(1) performing oral sex on a 9-year-old at age fourteen; (2) molesting about 5 girls at his church and his workplace at a fast-food restaurant; (3) exposing himself to a 5-year-old boy at age eighteen; (4) watching a 3-year-old girl play naked and later masturbating to the memory; (5) watching a ten-year-old girl play naked and later masturbating to the memory; and (6) placing

himself in areas where young children congregated, in violation of a court order. . . [and] [i]n 2003, Defendant was arrested and found to be taking pictures of 3-to-5 year old girls." *Id.* at 1296-96.

In 2009, Judge King imposed a 60-month sentence followed by a five-year term of Supervised Release here in the Southern District of Florida. *U.S. v. Riley*, 09-cr-20221-JLK (in part because a mechanical application of the Guidelines can result in an unnecessarily high sentence). It is important to note that in the *Riley* case, unlike the case before this Court, defendant Riley engaged in online communication with the undercover officer wherein defendant Riley believed to be communicating with a single mother of a 10-year-old girl. Defendant Riley sent images of prepubescent girls engaged in sexual acts to the undercover officer and upon receipt of an image that defendant Riley believed to be an image of the 10-year-old daughter, defendant Riley told the undercover officer that he would "love to f--k her." (*See* attached Criminal Complaint for U.S. v. Riley). The conduct in the *Riley* case is clearly much more egregious than any conduct performed by Carlo De Marco, who has never had sexual contact with any other human being and has never communicated his desire to do so to anyone.

The above-cited Eleventh Circuit cases and the Southern District of Florida sentence imposed by Judge King demonstrate that, when considering the <u>unique</u> history and characteristics of Carlo De Marco, it is not unreasonable for this court to impose the sentence recommended herein, to wit, a 60-month sentence of confinement in the Bureau of Prisons, with a judicial recommendation/referral to the BOP Sex Offender Treatment Program and a very extended period of Supervised Release with the special conditions

that the Court deems necessary to ensure the protection of the public and the continued, post-incarceration, treatment of the Defendant.

>Respectfully submitted,
>
>/s/ *William A. Clay*
>WILLIAM A. CLAY
>Counsel for Carlo Demarco
>BILL CLAY P.A. II
>Florida Bar No. 155102
>11440 North Kendall Drive
>Penthouse 400
>Miami, FL 33176
>Bill@billclaypa.com
>(305) 595-0866/phone
>(305) 595-9732/fax

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2011, undersigned electronically filed the foregoing document with the Clerk of Court using CM/ECF and therefore have accordingly served AUSA Sharad Motiani and USPO Rebecca Hill.

>*s/* William A. Clay
>WILLIAM A. CLAY