UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-20261-CR-MOORE

UNITED STATES OF AMERICAN

v.

CARLO DEMARCO,

                    Defendant.
_____/


UNITED STATES' RESPONSE TO
DEFENDANT'S SENTENCNIG MEMORANDUM [D.E. 76] AND MOTION FOR
DOWNWARD DEPARTURE [D.E. 77]


        The United States of American, by and through the undersigned Assistant United States

Attorney, hereby files this response to defendant Carlo DeMarco's Sentencing Memorandum

[D.E.76] and Motion for Downward Departure [D.E. 77].  In his Motion for Downward Departure,

the defendant argues that the Defendant is "highly susceptible to abuse in prison because of the

nature of his crime and the nature of his physical and emotional characteristics" [D.E. 76, p 1]. In

his Sentencing Memorandum, the defendant presents two principal arguments in support to of his

request to be sentenced to the statutory minimum term of imprisonment of 60 months.  First, he

argues that the defendant is susceptible to abuse in prison warranting a departure from the

guidelines.  Second, he argues, that a variance from the guidelines is appropriate to promote a

reasonable sentence. Neither of these claims have merit.  The Court should deny the defendant's

motion for a downward departure, because the defendant does not satisfy the criteria for a departure

under Section 5H1.4 under the United States Sentencing Guidelines (Guidelines). Furthermore, the

Court should decline the defendant's invitation to reject the child pornography guidelines wholesale.

Moreover, the sentencing factors set forth in Title 18, United States Code, Section 3553(a), applied to the defendant's case make clear that a Guideline sentence is appropriate and reasonable here.

<u>FACTS</u>

On February 10, 2010, a special agent (SA) with the from the Kansas City Division of the FBI accessed his undercover account on Giga Tribe.[1]  The SA sent a friend invite to the defendant (who used screening name "Xerox9") to join the defendant's Giga Tribe private file-sharing network.

After accepting the friend request, SA was able to view and download files from the defendant's computer that the defendant selected to share with other users.  On February 11, 2010, the SA logged onto Giga Tribe; browsed and previewed the defendant's shared files; and downloaded forty-two (42) images depicting minors engaging in sexually explicit conduct – that is, child pornography.

On February 24, 2010, SA logged onto his Giga Tribe account and queried his network of friends and observed that the defendant was logged onto the network.  SA browsed the defendant's shared folders and observed numerous video file titles indicative of child pornography. SA selected sixteen (16) files which appeared to contain child pornography and began to download these files directly from the defendant's computer.

---

[1]  Giga Tribe is a peer-to-peer (P2P) file sharing program that allows users to create their own private network of contacts (all of whom have to be Giga Tribe users).  Therefore, unlike other P2P file sharing programs like Limewire, file sharing via Giga Tribe is limited to those users you have included in your private network.  To add someone to your private network, you send them an electronic "invite" through Giga Tribe.  Once the invitee accepts your invitation they are added to your private network and are allowed to access and/or download any files you and the others in your network are sharing.  Likewise, the private network can access and/or download any files that the invitee is sharing.

On March 29, 2010, law enforcement officers executed a search warrant at the defendant's residence and seized several items, including two Hewlett Packard laptops.  Law enforcement examined the computers and found still and video images of child pornography.  Altogether the devices contained over 600 still images and 101 videos of child pornography.

<u>**ARGUMENT**</u>

**A.      The Court should deny the defendant's request for a departure from the guidelines.**

Defendant argues for a departure based on the grounds that the Defendant is "highly susceptible to abuse in prison because of the nature of his crime, and the nature of his physical and emotional characteristics [D.E.76, p. 2-4].

Section 5H1.4 of the United States Sentencing Guidelines provides the following:

> Physical condition or appearance, including physique, may be relevant in determining whether a departure is warranted, if the condition or appearance, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines. An extraordinary physical impairment may be a reason to depart downward; e.g. in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

Defendant argues that his physical condition and appearance in combination with his psychological disorders and the nature of the offense make a downward departure appropriate.  This argument will fail because the defendant is unable to meet the narrowly circumscribed standards for a departure based on physical condition.  To support departure for extraordinary susceptibility, a district court cannot simply rely on a defendant's status as a child pornographer, but must identify something exceptional about the facts of the case.  <u>United States v. Kapitzke</u>, 130 F.3d 820, 822 (8th Cir.1997). <u>See</u> <u>United States v. Long</u>, 977 F.2d 1264, 1277 (8th Cir.1992)(approving departure based on defendant's frail health); <u>United States v. Lara</u>, 905 F.2d 599, 601, 605 (2d

3

Cir.1990)(approving departure based on defendant's diminutive size, immature appearance, and bisexual orientation).   See, e.g. United States v. McKinney, 53 F.3d 664, 677-78 (5th Cir.1995)(upholding district court's denial of departure based on fifty-two year old defendant's heart problems and high blood pressure); United States v. LeBlanc, 24 F.3d 340, 348-49 (1st Cir. 1994).

The defendant is a 34 year-old man, who stands five feet six inches tall and weighs approximately 152 pounds.  He is basically healthy, but may require certain mental health treatment. There is nothing extraordinary about the defendant's physical condition that warrants a downward departure.

Defendant cites to U.S. v. Parish, 308 F.3d 922 (8th Cir. 2002) as support for his argument for a downward departure.  Parish involved a defendant who routinely visited pornographic sites while at work.  The Court departed downward for two reason. First, on the theory that the defendant's conduct was outside the "heartland" of the offense, in part because the defendant had not downloaded the images.  Id. at 925. Second, on the theory that the defendant's stature, demeanor, and naivete rendered him susceptible to abuse by other inmates while in prison. Id. at 1031-1032.

Defendant's case differs from Parish. In Parish, the defendant "had not affirmatively downloaded the pornographic files, indexed the files, arranged them in a filing system, or created a search mechanism on his computer for ease of reference or retrieval.  Rather, the images had been downloaded automatically into his Temporary Internet Cache file" Id. at 1030. Here, the defendant would not qualify for a downward departure the on the theory that the defendant's conduct was outside the "heartland" of the offense, in part because the defendant downloaded hundreds of images, which was encrypted with a password.  In Parish, the court heard from a doctor who

4

testified that Parish's possession of child pornography was "pretty minor" when compared to the images possessed by other offenders. <u>Id</u>. The images on the defendant's computer are not "pretty minor" by any means. Furthermore, the defendant's computer contained over 600 images and over 101 videos. Here, the defendant's conduct is not outside the "heartland" of the offense and thus does not warrant a downward departure.

Defendant's case also differs from <u>Parish</u> under the second theory that the defendant is unusually susceptible to abuse by other inmates. In <u>Parish</u>, the court found that Parish was susceptible to abuse in prison based on "his stature, his demeanor, his naivete, [and] the nature of the offense" <u>Id</u>. at 1031. The court was unable to comment on the Parish's stature and his demeanor due to the fact that they had never seen the defendant. The court considered the defendant's naivete and noted that it could refer to the defendant's action in committing this crime. "The fact that there is no evidence that Parish ever intentionally downloaded any pornography and did any way organize the materials on his computer suggests that he may not have understood that he was coming into possession of these images, rather than merely viewing them." <u>Id</u>. at 1032. Here, the defendant's actions are completely opposite to the defendant in <u>Parish</u>. Unlike the defendant in <u>Parish</u>, the defendant admitted to looking at child pornography for a number of years, and downloading hundreds of images, which were encrypted with a password. Furthermore, the defendant did not merely view these images. Rather, he understood that he was coming into contact with these images, and made these images secure by encrypting them with a password.

Susceptibility to abuse in prison justifies departure only in extraordinary circumstances. <u>See</u> <u>United States v. Belt</u>, 89 F.3d 710, 714 (10th Cir.1996); <u>see</u> <u>Koon</u>, 518 U.S. at ----, 116 S.Ct. at 2053. <u>See</u> <u>also</u> <u>United States v. Rybicki</u>, 96 F.3d 754, 759 (4th Cir.1996) (district court cannot depart

based on extraordinary punishment merely because police officers as a class suffer disproportionate problems when incarcerated);

Defendant argues that his "susceptibility to abuse is exacerbated by...DeMarco's extremely high level of [social] anxiety and historical inability to interact with others on a significantly high level" [D.E. 76, p. 3]. The government agues to the contrary. An examination of the defendant's Presentence Investigation Report (PSI) demonstrates that the defendant is able to interact with others on a high level. From August 25, 1993, to August 1, 2003, the defendant attended the Miami Dade College. [PSI ¶ 61]. During that time, the defendant was awarded an associate in science degree in electronic engineering. Id. at ¶ 62. He was also awarded an associate in science degree in computer engineering technology. Id. On December 18, 2004, the defendant was awarded an associate in science degree in aviation administration. Id. On December 18, 2004, the defendant was awarded a college credit certificate in airline/aviation management where he attained a 3.38 grade point average. Id. In order to attain these achievements, the defendant must be able to interact with others on a significantly high level.

For child sex crimes, extraordinary physical impairment may be grounds to depart downward if authorized by Section 5H1.4. See U.S.S.G. § 5K2.22(2). However, Section 5H1.4 largely pertains to departures involving the seriously infirm or specified substance abuse treatment purposes. See U.S.S.G. § 5H1.4. Neither circumstance is applicable to DeMarco. The defendant is unable to meet the narrowly circumscribed standards for a departure under U.S.S.G. Section 5H1.4. There is nothing extraordinary about the defendant's physical condition and psychological disorders that warrants a downward departure.

**B.** **A guideline sentence is appropriate under the § 3553(a) factors.**

DeMarco contends that he deserves a downward variance based on his lack of criminal record, mental health problems, and childhood [D.E. 76].  DeMarco claims that his background including his mental and emotional state based upon the events that have taken place in his life qualify as mitigating circumstances under 18 U.S.C. § 3553(b)(1).

In child sex cases, courts are directed to impose a sentence within the range established by the applicable U.S. Sentencing Guidelines, unless they uncover a mitigating circumstance that: (1) has been affirmatively and specifically identified in the Guidelines, or policy statements, as permissible grounds for a downward departure; (2) has not adequately considered by the U.S. Sentencing Commission; and (3) should result in a non-guideline sentence.  See 18 U.S.C. § 3553(b)(2)(A)(ii).  Any departure from the Guidelines in a child sex case, including the distribution of child pornography, is governed by U.S.S.G. § 5K2.0(b).  This provision states:

> The grounds enumerated in this Part K of Chapter Five are the sole grounds that have been affirmatively and specifically identified as a permissible ground of downward departure in these sentencing guidelines and policy statements.  Thus, notwithstanding any other reference to authority to depart downward elsewhere in this Sentencing Manual, a ground of downward departure has not been affirmatively and specifically identified as a permissible ground of downward departure within the meaning of section 3553(b)(2) unless it is expressly enumerated in this  Part K as a ground upon which a downward departure may be granted.

U.S.S.G. § 5K2.0(b).

The commentary to Section 5K2.0 notes that the standard for a downward departure in child sex offenses differs from the standard for other departures.  The basis for a child sex offense downward departure should also be affirmatively and specifically identified as a ground for departure under Chapter 5, Part K.  See U.S.S.G. § 5K2.0, cmt. n.4(B)(I).

The Government recognizes that 18 U.S.C. § 3553(b)(2)(ii) is no longer mandatory in light

of United States v. Booker, 543 U.S. 220 (2005) and its progeny.  See also United States v. Hecht, 470 F.3d 177 (4th Cir. 2006); United States v. Grigg, 442 F.3d 560 (7th Cir. 2006).  However, this Court should give great weight to congressional intent that downward departures and/or variances should be extremely rare in child sex cases.  The U.S. Sentencing Commission has also made it very clear that child sex crimes under Chapter 110, including the distribution of child pornography, are to be treated differently than other types of crimes.  See U.S.S.G. § 5K2.13 (may not depart based on diminished capacity); § 5K2.20 (may not depart based on aberrant behavior), § 5K2.22(3) (may not depart based on drug/alcohol dependency or abuse); see also U.S.S.G. § 5H1.6 (family ties and responsibilities not relevant for departure); § 5H1.11 (military service only relevant for departure if "present to an unusual degree and distinguishes the case from typical cases covered by the guidelines") § 5H1.12 (lack of guidance as youth/disadvantaged childhood not relevant for departure); § 5H1.8 (under § 4A1.3, downward departures prohibited for defendants with category I criminal history).

In considering whether to exercise its discretion to vary from a guideline on policy grounds, courts must also be mindful of their institutional competency.  Courts simply are not institutionally equipped to judge policy decisions of Congress.  Even if courts could review each hearing transcript, floor debate transcript, study, and constituent letter examined by Congress, they could not fully take into account the judgment of each member of Congress in crafting and enacting each piece of legislation that has formed a guideline.  It trammels the prerogative of the democratically-elected legislature for courts to take it upon themselves to rewrite sentencing guidelines wholesale.

The Supreme Court discussed the courts' competency in determining sentencing policy in Gregg v. Georgia, 428 U.S. 153 (1976), in which the Court evaluated a sentence to determine

8

whether it constituted cruel and unusual punishment:

> "Courts are not representative bodies. They are not designed to be a good reflex of a democratic society. Their judgment is best informed, and therefore most dependable, within narrow limits. Their essential quality is detachment, founded on independence. History teaches that the independence of the judiciary is jeopardized when courts become embroiled in the passions of the day and assume primary responsibility in choosing between competing political, economic and social pressures." Dennis v. United States, 341 U.S. 494, 525, 71 S.Ct. 857, 875, 95 L.Ed. 1137 (1951) (Frankfurter, J., concurring in affirmance of judgment).

> Therefore, in assessing a punishment selected by a democratically elected legislature against the constitutional measure, we presume its validity. We may not require the legislature to select the least severe penalty possible so long as the penalty selected is not cruelly inhumane or disproportionate to the crime involved. And a heavy burden rests on those who would attack the judgment of the representatives of the people.

> This is true in part because the constitutional test is intertwined with an assessment of contemporary standards and the legislative judgment weighs heavily in ascertaining such standards. "(I)n a democratic society legislatures, not courts, are constituted to respond to the will and consequently the moral values of the people." Furman v. Georgia, *supra*, 408 U.S., at 383, 92 S.Ct., at 2800 (Burger, C. J., dissenting). The deference we owe to the decisions of the state legislatures under our federal system, 408 U.S., at 465-470, 92 S.Ct., at 2842-2844 (Rehnquist, J., dissenting), is enhanced where the specification of punishments is concerned, for "these are peculiarly questions of legislative policy." Gore v. United States, 357 U.S. 386, 393, 78 S.Ct. 1280, 1285, 2 L.Ed.2d 1405 (1958).

*Id.* at 174-76.

The Court may, and indeed, must, evaluate the particular circumstances of this defendant's case to determine what sentence best achieves the objectives set forth in 18 U.S.C. § 3553(a). It should not, however, act as a super-legislature. It should not, as the defendant proposes, invalidate a Guideline resulting from the interplay of Commission study and Congressional directive. When considering the validity of the Guideline itself, the Court should not substitute its own judgments regarding child pornography offenses for the moral and policy judgments of the People of the United States—judgments set forth in the Guideline shaped by a democratically elected Congress.

The defendant's actions fall squarely within the heartland of cases involving violations of 18 U.S.C. § 2252(a)(2). The defendant's child pornography crimes involve prepubescent children. For purposes of 18 U.S.C. § 3553(b), very little is extraordinarily unusual about the nature or circumstances of the defendant's offense or his personal characteristics. The guideline sentence calculated by Probation in the defendant's case is 151 to 188 months. The defendant suggests that the appropriate sentence is 60 months, a downward variance of 91 months. As set forth below, a sentence of only 60 months would be unreasonable pursuant to the § 3553 factors.

1.      **The nature and circumstances of the offense counsel for a significant sentence.**

The § 3553 factors require the Court to take into account "the nature and circumstances of the offense," "the seriousness of the offense," and the need "to provide just punishment." All of these factors counsel for a sentence far in excess of the defendant's request for 60 months.

In support of his request for such a significant variance, the defendant plainly attempts to minimize his offense. See Memorandum at 5 ("With regard to how Mr. DeMarco committed the crime of distribution of material containing child pornography, it is important to understand the way in which peer-to-peer file sharing software that Mr. DeMarco utilized works. Once the peer-to-peer software is installed on one's computer, the user can then designate any data on his hard drive to be "shared" through the peer-to-peer software. Once the user connects with another user through the peer-tot-peer software, each user can then download any file that is contained in the other user's "shared" folder. Therefore, Mr. DeMarco did not actively distribute the material in the regular sense. Instead, he was passively sharing the material. The difference is akin to leaving a basket of fruit on your doorstep for people to take if they want, as opposed to going around the neighborhood and delivering fruit to your neighbors probatively.").

10

In the context of sentencing guidelines enhancements for "distribution" of child pornography, several Circuit Court of Appeals have held that use of a peer-to-peer program which makes child pornography available for download by others is sufficient. See United States v. Layton, 564 F.3d 330, 335 (4th Cir. 2009)("We...hold that use of a peer-to-peer file-sharing program constitutes 'distribution' for the purposes of U.S.S.G. § 2G2.2(3)(b)(F)."); United States v. Corani, 492 F.3d 867, 876 (7th Cir. 2007); United States v. Griffin, 482 F.3d 1008, 1010-11 (8th Cir. 2007)(permitting others to download child pornography files via peer-to-peer network qualified defendant for distribution enhancement.).

Here, the defendant admitted to knowing that he had downloaded child pornography from Giga Tribe and that he was familiar with file sharing program. When using the Giga Tribe software, there is no default setting for sharing files. Once a user sets up a Giga Tribe account, a user must install Giga Tribe unto his/her computer, as the defendant did. After the installation, the user must create their profile and create a shared folder in which they place the files to be shared. Once on the Giga Tribe network, the only individuals that a user can connect to and browse, are the users who have been accepted by both screen names as a friend. Once accepted as a friend, the user can right click on the name of the other user and select "browse this user" in order to see the files that are being shared. In addition, there is a transfer tab which monitors all of the files that the user is downloading from others as well as what others are attempting to upload from them. The defendant distributed child pornography images by using the Giga Tribe software. The circumstances of that distribution counsel in favor of a significant sentence.

Moreover, the nature of the images the defendant distributed also militate in favor of a guideline sentence. The defendant's memorandum ignores actual images he distributed, referring

to them only generally as "child pornography." To do otherwise would severely undercut his request for such a significant variance. The nature and content of these images are, however, central to the Court's sentencing determination and should be carefully considered in assessing the nature of the defendant's offense.

It bares repeating that when the threat of being caught and the fear of a long prison sentence were not present, the defendant used the Internet to distribute images depicting the prepubescent minors engaging in sexual acts with other prepubescent minors and adults.

The fact that the defendant did not produce these images or engage in sexual conduct with minors does not make a guideline sentence unreasonably high, nor does it justify a 60-month prison term. Such a claim is, likewise, misleading. The defendant's comparison of his crime to other crimes which he did not commit and with which he was not charged is irrelevant to the Court's sentencing determination. The Court must decide where, within the range prescribed by the statute of conviction, the defendant should be sentenced. In the defendant's case, the lower limit of that range is 60 months (the statutory minimum), and the upper limit is 240 months (the statutory maximum).

The defendant certainly could have engaged in more heinous acts. He could have produced child pornography himself or engaged in sexual conduct with a minor. But if the Defendant had committed such acts, he would be subject to an entirely different, and more severe, statute with more severe penalties. For instance, had Defendant produced child pornography, he would be subject to a minimum prison term of 180 months and a maximum term of 360 months. *See* 18 U.S.C. 2251(e).

Viewed within the context of the child pornography distribution, the defendant's crime is a serious one. It is not so serious to subject him to the maximum sentence of 20 years, but it is far

12

more serious than the 60-month sentence requested.  Such a low sentence severely under represents the severity of the defendant's conduct.  Any suggestion that the continued distribution of images memorializing the sexual abuse children is not a severe crime works a tremendous injustice on the children victimized in the child pornography that the *defendant* possessed and distributed.  Put simply, the defendant's crime is a serious one.  It should be treated as such.

> **2.**     **The history and characteristics of Defendant provide no basis for a sentence below the guideline.**

Defendant argues that his lack of criminal history, and a psychologist's opinion that "Mr. DeMarco's history is characterized by a number of symptoms of Autism Spectrum, indicating he falls somewhere on the continuum although not at the diagnostic cutoff point" and that he has not committed a contact offense through his polygraph, somehow justify a sentence at the statutory minimum.  None of these factors justify such a drastic variance given the seriousness of the defendant's offense.  The guidelines take into account the defendant's lack of criminal history. Moreover, in Dr. Sczechowicz's Addendum to Psychosexual Evaluation, Dr. Sczechowicz agreed with the evaluation team at the University of North Carolina that "while he does have symptoms that are similar to those on the Autism Spectrum, these symptoms do not meet the criteria on measures considered to be the gold standards of autism assessment." [D.E. 76-2]. Dr. Sczechowicz's opinion that the defendant falls somewhere on the continuum although not at the diagnostic cutoff point for Autism provides little justification for a sentence of the statutory minimum.

> **3.**     **The Need for the Sentence to Promote Respect for the Law**.

A sentence below the guideline range would not reflect the seriousness of this offense and could not "promote respect for the law" or "promote just punishment," pursuant to 18 U.S.C. § 3553(a)(2)(A). Given that child pornography has become so prevalent, it is imperative that a

sentence be imposed that affords adequate deterrence to criminal conduct and promotes future lawful conduct, pursuant to 18 U.S.C. § 3553(a)(2)(B). A sentence also should protect the public from further crimes of the defendant, pursuant to 18 U.S.C. § 3553(a)(2)(C). The aims of deterrence and incapacitation would not be served by a sentence below the guidelines.

     **4.     A guideline sentence is necessary to provide appropriate deterrence.**

A primary purpose of child pornography legislation is to combat the consumption of, and market for, child pornography.  Sentences that accurately reflect the seriousness of the offense will promote respect for the law, reduce the market for child pornography, and, as a result, reduce the number of children victimized for the sake of production of child pornography.  A minimum mandatory sentence simply does not provide sufficient deterrence for this conduct.

     **5.     The defendant is in need of treatment.**

The defendant requests this Court to recommend and refer him to a Bureau of Prisons facility where he will be able to participate in the Sex Offender Treatment Program.  The Government agrees with this request and believes that such treatment will be beneficial to the defendant.

     **6.     The needs of the public and the victims of the offense counsel in favor of a guideline sentence.**

Plainly missing from the defendant's memorandum is any acknowledgment that the children depicted in these images are harmed when the images of their abuse are collected, distributed and traded.  The actions of the defendant and other consumers of child pornography results in real injury.  Each child depicted in the images possessed and distributed by the defendant has been victimized by him.  The violence perpetrated against them happened because of the demand for more and more shocking child pornography created by the defendant and others like him.  The public and the

victims of child pornography have a strong interest in punishing the defendant for this serious crime.

Over two decades ago, the Supreme Court, in <u>New York v. Ferber</u>, 458 U.S. 747 (1982), addressed the harm to victims resulting from the distribution of child pornography:

> The distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children . . . . .[T]he materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation . . . .[P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.

<u>Id</u>. at 759-60 and n.10 (internal citations omitted).

<u>Ferber</u> was decided in a time before digital cameras, before gigabytes of information could be stored on a hard drive or thumb drive, and before every household had a computer connected to the Internet.  When <u>Ferber</u> was decided, a producer of child pornographer needed photographic equipment, access to a darkroom, and/or video equipment.  A consumer of child pornography was dependent on the U.S. mail to obtain new materials.  Against this backdrop, the Supreme Court's observations regarding the harm caused by the distribution of child pornography are even more true today than they were twenty-seven years ago.

The interest of the public and victims of child pornography in a sentence that reflects the seriousness of child pornography offenses cannot be overstated.  These interests are not served by the minimum mandatory sentence requested by the defendant; they are served by the guideline sentence endorsed by Probation.

15

<u>C</u><u>ONCLUSION</u>

For the foregoing reasons, the United States respectfully requests that the Court sentence

Defendant to a term of imprisonment of 151 months' imprisonment.


                            Respectfully submitted,
                            WIFREDO A. FERRER
                            UNITED STATES ATTORNEY

By:    *s/ Sharad A. Motiani*
                            SHARAD A. MOTIANI
                            Assistant United States Attorney
                            Florida Bar No.: 711233
                            99 Northeast 4th Street
                            Miami, Florida 33132-2111
                            Tel: (305) 961-9392
                            Fax: (305) 530-7976


**<u>CERTIFICATE OF SERVICE</u>**

**I HEREBY CERTIFY** that on September 23, 2011, I electronically filed the foregoing

United States' Response to Defendant's Sentencing Memorandum with the Clerk of the Court using

CM/ECF.


                            *s/ Sharad A. Motiani*
                            Assistant United States Attorney

16