```
 1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF FLORIDA
 2                     MIAMI DIVISION

 3          CASE NUMBER 10-20261-CR-MOORE/TORRES

 4
   UNITED STATES OF AMERICA,
 5                                    Courtroom 13-1
              Plaintiff,
 6                                    Miami, Florida
      vs.
 7                                    October 6, 2011
   CARLO DEMARCO,
 8                                    (Pages 1 - 14)
              Defendant.
 9  ═══════════════════════════════════════════════
10               SENTENCING PROCEEDINGS
        BEFORE THE HONORABLE K. MICHAEL MOORE
11             UNITED STATES DISTRICT JUDGE

12  ═══════════════════════════════════════════════
    APPEARANCES:
13
    FOR THE GOVERNMENT:    SHARAD A. MOTIANI, AUSA
14                         United States Attorney's Office
                           99 Northeast 4 Street
15                         Miami, Florida 33132
                                          305.961.9392
16                              Fax:  305.530.7976

17
    FOR THE DEFENDANT:     WILLIAM A. CLAY, ESQ.
18                         Bill Clay, P.A.
                           11440 N. Kendall Drive - Suite 400
19                         Miami, Florida 33176
                                          305.595.0866
20                              Fax:  305.595.9732

21
    REPORTED BY:           GILDA PASTOR-HERNANDEZ, RPR, FPR
22                         Official United States Court Reporter
                           Wilkie D. Ferguson Jr. US Courthouse
23                         400 North Miami Avenue - Suite 13-3
                           Miami, Florida  33128   305.523.5118
24                         email:  gphofficialreporter@gmail.com

25
```

**TABLE OF CONTENTS**

Page

Reporter's Certificate ..................................... 14

**EXHIBITS**

| Exhibits | Marked for Identification | | Received in Evidence | |
|---|---|---|---|---|
| Description | Page | Line | Page | Line |

 1       (The following proceedings were held in open court at 2:25

 2  p.m.)

 3            THE COURTROOM DEPUTY:  United States of America versus

 4  Carlo DeMarco.  Counsel note your appearances, please.

 5            MR. MOTIANI:  Good afternoon, Your Honor.  Assistant

 6  United States Attorney, Sharad Motiani on behalf of the United

 7  States.

 8            MR. CLAY:  Good afternoon, Your Honor.  Bill Clay

 9  representing Carlo DeMarco.

10            THE COURT:  Okay.  So I thought we left off to give the

11  Government an opportunity to respond to those cases that

12  Mr. Clay was relying on; is that correct?

13            MR. MOTIANI:  Yes, Your Honor.  Actually, I have

14  something I need to inform the Court of with respect to that.

15            THE COURT:  Okay.

16            MR. MOTIANI:  I discussed this case at length with the

17  Project Safe Childhood coordinator, Martinez --

18            THE COURT:  Right.

19            MR. MOTIANI:  -- and actually reviewed all the cases,

20  U.S. versus Gray, McBride, Riley.  There's no dispute that the

21  facts in those cases are much more egregious than the facts

22  here.  After speaking with the Project Safe Childhood

23  coordinator, reviewing those cases but also reviewing

24  distribution cases here within the Southern District of Florida,

25  specifically from Key West to Fort Pierce, my office has

1    informed me that on distribution cases of child pornography,

2    there has been a range of sentence from 60 to 84 months.  That's

3    been as of 2010.

4           Actually, I have pulled three additional cases that I

5    can inform Your Honor of where in two out of those three cases,

6    the defendants were charged with distribution of child

7    pornography, they pled guilty to distribution of child

8    pornography and were sentenced to 60 months in prison.  Another

9    case the defendant was actually sentenced to 84 months in

10   prison; and those cases were similarly situated to the defendant

11   in this case where there was no criminal record, no evidence of

12   any sort of contact with children before.  It all involved the

13   peer-to-peer programs where the download had happened.  There

14   was either some sort of a combination of either a mental

15   disability or a sexual abuse had happened or some sort of social

16   anxiety.  So I was informed that I need to inform the Court that

17   we're no longer going to oppose defense counsel's motion for a

18   downward departure or variance based upon the cases that counsel

19   cited but also based upon the research that I have done through

20   my office.

21          THE COURT:  Well, thank you for that.

22          Now, Mr. Clay, at our last hearing, what was it that

23   you had requested?

24          MR. CLAY:  Your Honor, I had requested as I have

25   consistently in the sentencing memorandum, a supplement to it --

1    and I filed a second supplement this morning upon receiving the

2    probation officer's Third Addendum to the PSI which supplies the

3    Court with even more statistics that is even more supportive of

4    the defendant's request for a five-year sentence of confinement,

5    followed by an extended term of supervised release, and I'm

6    suggesting to the Court and asking the Court to put stringent

7    requirements in the supervised release as to continued therapy

8    for the various psychological illnesses and psychosexual illness

9    of my client.  I'm asking the Court, with the Government's

10   agreement, that you make what is called a judicial referral to

11   the Bureau of Prisons or recommendation, but the language they

12   use is referral, to refer Mr. DeMarco to the Sexual Offender

13   Treatment Program.  So I'm of course, re-urging the five-year

14   sentence of confinement, et cetera.

15          The statistics provided are quite impressive in that it

16   appears in the Southern District of Florida in distribution of

17   child pornography cases that the judges are departing or varying

18   below the sentencing guidelines at the frequency of 66.7

19   percent.  So that presents a very interesting situation in that

20   what I'm asking for is not only not out of the heartland of

21   sentencing patterns and results in this district, what I'm

22   asking for, that is, a variance and a below guideline sentence

23   and a departure, which the Government now agrees with, is

24   actually well within the norm, and the statistics are in favor

25   of such a below guideline sentence.

1          What's out of the heartland here is Mr. DeMarco.  Your

2   Honor took note of all points I made and I think probation has

3   and Mr. Motiani definitely has, that Mr. DeMarco is different

4   through no fault of his own.  He's different and the differences

5   started in childhood, big differences.  Moms are nuturing and

6   loving.  His mom, due to her own problems and dysfunctions, was

7   hateful and abusive, sexual offense committed on him by his

8   stepfather at age seven, untreated psychological problems

9   somewhere on the spectrum of Asperger's disorder, which is in

10  the family of autism, et cetera.  I've presented all of that.

11          Mr. Motiani, the Government, and I have talked

12  extensively since our hearing last week, and I'll let the

13  Government, you know, articulate its bottom-line position, but I

14  think we're pretty much unified at this point in what we're

15  recommending that the Court do.

16          Thank you, Your Honor.

17          THE COURT:  Okay.  Well, I think we're at a point of

18  substantial agreement, and I want to make a couple of comments.

19  First of all, to commend the U.S. Attorney's Office and

20  Mr. Motiani for their review of the matter and their candor in

21  apprising the Court and in helping the Court in arriving at an

22  appropriate sentence.

23          Secondly, in imposing a sentence below the guideline

24  range, I don't want to leave anyone with any doubt about the

25  seriousness of the underlying offense and how seriously the

1    Court takes it.  So it should not be mistaken that a sentence
2    below the guideline range is in any way misinterpreted as a lack
3    of concern about the seriousness of the offense.
4          Having said that, you know, I looked at those cases
5    that were submitted very carefully, and each case has its own
6    unique set of facts, but certainly, there were a number of
7    parallels in this case to those cases where the District Court
8    varied below the guideline range and in cases also where it had
9    been reviewed on appeal.  I think that looking at these cases
10   you can see that there is still some strong disagreement as to
11   what the appropriate sentence could be.  I'm referring
12   specifically to the case in which the chief judge of the circuit
13   dissented, and that was primarily with respect to the length of
14   the supervised release, but he objected to the sentence on
15   reasonableness grounds as well.  So there is still pretty wide
16   difference of opinion on what is a reasonable sentence.
17         The case that I had referred to at the last hearing was
18   the Irey case, I-r-e-y, where there was strong disagreement I
19   think from the Court or within the court about not just what a
20   reasonable sentence was but the exercise of the District Court's
21   discretion.  But I think the Government has pointed out, and it
22   was something that I was focusing on, too, at the last hearing,
23   and that is, there are gradations to these kinds of cases; and I
24   have not been hesitant to sentence people that are involved in
25   child pornography to lengthy prison terms where there has been

1   physical contact, where they have had undercover chat meetings

2   or they're having chat meetings with officers posing as mothers

3   of prepubescent children, where there have been actual

4   production of child pornography and the intentional transmission

5   of child pornography, pictures over the Internet.  But I saw no

6   evidence of that in this case and I think there was some

7   evidence of psychological abuse earlier in life and I think all

8   those counseled in favor of a variance.

9          Now, I wanted to get everybody back together again to

10  particularly hear from the Government with its own response and

11  we have gotten that today and I was prepared to spend some time

12  writing an order anticipating the Government's opposition to a

13  sentence below the guidelines and making specific findings that

14  would serve to inform the appellate court on review of the

15  reasons for a sentence outside the guidelines which I think I

16  would be obligated to do if there was a disagreement as to the

17  sentence to be imposed.  I certainly respect the Government's

18  right to appeal any sentence I impose if they don't think it's

19  reasonable, but I want to be practical here, too.  And if it's

20  not necessary, then I wouldn't do it.

21         Now, one of the cases that you showed me was from Judge

22  King, where as I understand it, the Government did not appeal,

23  and I thought Judge King just did an excellent job, and it's not

24  surprising that he wouldn't because he's been at it for a long

25  time and knows what he's doing, but he made some interesting

1   points in there.  The quotes that he gave from -- I don't have

2   it in front of me now, but about how these individuals in these

3   child pornography cases get ratcheted up with these enhancements

4   in the Vanela case.  They get bumped up because they use a

5   computer.  They get bumped up because there's a distribution

6   determination made even when there's no actual intent to

7   distribute it, it's just distributed because of the download, by

8   virtue of the download.  They get bumped up for the number of

9   pictures, and before you know it, the average case is looking at

10  151 months and you windup with those kinds of sentences that

11  really don't discriminate between just a simple -- I shouldn't

12  say, just a simple download -- but a download like this versus

13  some of the more egregious instances of distribution of child

14  pornography.  And that is one reason for the justification to

15  depart or to vary downward, but in many other respects, there

16  was the evidence of the psychological harm as well.

17       I think there might have been a difference in that

18  case.  In that case age was a consideration, I think it was

19  noted, and the individual was older and had not engaged in any

20  prior criminal activity.  Now, age is normally not to be a

21  consideration for a departure, but somehow age I guess can be

22  considered for a variance.

23       What I see in the individual before me, even though

24  he's younger than the individual in the King case, he's

25  basically led a law-abiding life with the exception of this

1    single instance.  It's hard to believe that a lengthy sentence

2    or a lengthier sentence for a law-abiding citizen, otherwise

3    law-abiding citizen who is relatively younger than the defendant

4    in the King case, makes any more sense.  I mean, there's no

5    reason to think that a lengthier sentence in this defendant's

6    case would serve any of the objectives of 3553 or the

7    guidelines.  There also running throughout the opinion was the

8    importance of imposing a sentence that was no longer than what

9    was necessary to achieve those objectives.

10            So, I guess the conclusion from those cases, and as I

11   say in particular the Judge King case, was that a 60-month

12   sentence was justified.  I know that that is less than,

13   substantially less than half of the bottom of the guideline

14   sentence, and I know that there was some discussion about that

15   in two of the other cases that went on appeal.  But if I'm not

16   hearing any objection from the Government, then it would be my

17   intention to sentence the defendant to a 60-month period of

18   incarceration.

19            MR. MOTIANI:  Your Honor, the Government has no

20   objection to that.

21            THE COURT:  Okay.  All right.  Well, Mr. Clay, it's

22   been a healthy and helpful discussion I think we've had, and I

23   think I guess you're fortunate as well as is your client I

24   suppose really that we took the additional time to give the

25   Government an opportunity to review your concerns.

1        So Mr. DeMarco, do you want to say anything further on

2   your own behalf before sentence is imposed?

3        THE DEFENDANT:  No, Your Honor.

4        THE COURT:  All right.  Anything further from anyone?

5        If not, the Court has considered the statements of all

6   parties, the Presentence Report which contains the advisory

7   guidelines and the statutory factors.  It's the finding of the

8   Court that the defendant is not able to pay a fine.  It's the

9   judgment of the Court that defendant, Carlo DeMarco, is

10  committed to the Bureau of Prisons to be imprisoned for 60

11  months as to Count 1.

12       Upon release from imprisonment, the defendant should be

13  placed on supervised release for a term of life.  Within 72

14  hours of release, the defendant is to report in person to the

15  probation office in the district where released.  While on

16  supervised release, the defendant shall not commit any crimes,

17  shall be prohibited from possessing a firearm or other dangerous

18  device, shall not possess a controlled substance, shall

19  cooperate in the collection of DNA and shall comply with the

20  standard conditions of supervised release including the

21  following special conditions:  Computer possession restriction,

22  employer computer restriction disclosure, no contact with

23  minors, sex offender treatment, restricted from possession of

24  sexual materials, Adam Walsh Act, search condition and sex

25  offender registration as noted in part G of the Presentence

1   Report.  The defendant shall immediately pay to the United

2   States a special assessment of $100.

3           I think the language that you were looking for is --

4   you want a recommendation from the Court to be included in the

5   Judgment and Commitment that the defendant be referred for

6   sexual addiction treatment or rehabilitation.

7           MR. CLAY:  I'd ask the Court to phrase it in terms of

8   that the Court makes a recommendation and referral to the Bureau

9   of Prisons that the defendant be admitted into the sexual --

10  excuse me -- Sex Offender Treatment Program, that's the exact

11  name of it, as recommended by the study that was conducted by

12  BOP and as recommended by the PSI and the Government.

13          THE COURT:  Okay.  We'll include in the judgment that

14  recommendation that the defendant be referred to the Bureau of

15  Prisons to be admitted to their Sex Offender Treatment Program.

16          Okay.  What else did you want to have included in the

17  Judgment and Commitment?

18          MR. CLAY:  Nothing further.  I would like to make one

19  remark at the very end of the proceeding, Your Honor.

20          THE COURT:  All right.  Let me finish then.

21          The forfeiture of the defendant's right, title and

22  interest of certain property is hereby ordered consistent with

23  the Plea Agreement.  The United States shall submit a proposed

24  order of forfeiture within three days of this proceeding.

25          Now that sentence has been imposed, does the defendant

1    or his counsel object to the Court's finding of fact, object to

2    the manner in which sentence was pronounced?

3         MR. CLAY:  No, sir.

4         THE COURT:  Mr. DeMarco, do you understand you have a

5    right to appeal the sentence that I've imposed?

6         THE DEFENDANT:  Yes, your Honor.

7         THE COURT:  Do you wish to appeal?

8         THE DEFENDANT:  No.

9         THE COURT:  All right.  Anything further?

10        MR. MOTIANI:  Your Honor, the Government would just

11   make an ore tenus motion to dismiss the remaining counts of the

12   Indictment per the Plea Agreement.

13        THE COURT:  It will be granted.

14        MR. CLAY:  Your Honor, if I may very briefly address

15   the Court and the Government.

16        THE COURT:  All right.

17        MR. CLAY:  I must commend, myself, the diligence of the

18   prosecutor and the supervisory personnel, because these types of

19   decisions don't happen just on the decision of one prosecutor.

20   So I know the tendency of institutions to kind of go with what

21   they've always taken for a stance and that is reality, but that

22   doesn't produce the best quality of justice.

23        I think what has happened in this case is something

24   that I, personally, am very proud to be a participant in.  I'm

25   proud of Mr. Motiani as a prosecutor, a professional prosecutor,

1  who put the labor in, the time in, he opened his mind, he talked

2  it out with bosses.  I'm sure he encountered some institutional

3  resistance, and of course, I'm very appreciative that the Court

4  came into this case in a very conscientious fashion.  But this

5  is one of those cases where I think we all go home and we all

6  can be proud of ourselves, and we can be proud of our system.

7  It works because all three legs of the system did their job and

8  probation did theirs, and to me it's kind of a blueprint that

9  this kind of production of justice, fair sentences, can happen

10  in every case.  It takes work and that's what is expected of us

11  and that's what we've all done.

12        I just want to thank everyone, Your Honor, and everyone

13  for doing the heavy lifting that was required here.

14        Thank you, sir.

15        THE COURT:  Thank you.  Appreciate it.  Okay.

16        THE COURTROOM DEPUTY:  Court is adjourned.

17     (The hearing concluded at 2:50 p.m.)

18              C E R T I F I C A T E

19        I hereby certify that the foregoing is an accurate

20  transcription of proceedings in the above-entitled matter.

21

22  ___11-17-11_____        _____
       DATE                    GILDA PASTOR-HERNANDEZ, RPR, FPR
23                             Official United States Court Reporter
                               Wilkie D. Ferguson Jr. U.S. Courthouse
24                             400 North Miami Avenue, Suite 13-3
                               Miami, Florida  33128    305.523.5118
25                             gphofficialreporter@gmail.com